Good morning, and may it please the Court. Hunter Haney for the Appellant Cao Hong. I'd like to reserve three minutes for rebuttal, and I'll watch my clock. Thank you. Cancel. Unless the Court prefers otherwise, I plan to address the sufficiency and the hearsay issues before briefly touching upon the instructional errors, if time permits. Insufficient evidence supported the conspiracy charge in this case because there was no proof that Hong entered in a legal agreement with anyone, including his alleged referrer, Kuen, his alleged associate, Su, or the unknown co-conspirator that the government has devised for the first time on appeal. So turning to the government's primary theory first, that Kuen brokered a transaction with Hong. This was based entirely upon recorded phone calls with an informant, but those phone calls established at most a prior relationship, not the required a legal agreement. On the first phone call, Kuen referred the informant to Hong, but one referral on its own is not sufficient. You need some interdependence between the co-conspirators. This referral revealed no prior business or prior communications, any sort of coordination and planning, as this Court and others have required. So is your theory that, in effect, Hong was an independent contractor who Kuen referred the informant to? I think, but there was, that's just that he just happened to know there was a there was a meth seller out there, so that when the informant called Kuen and said, can you sell me meth, he said, no, but I know somebody who can. He was, in essence, he was operating at arm's length from Kuen. Kuen, you know, if you look at all of the broker cases, for example, if the government has cited, we went through them at length in our reply brief, you see much more detailed involvement by the co-conspirator. What do we do with the, what occurs on the day of the buy, when, with the same day of the buy, later in the day, when the CHS calls Hong and says, I'm Kuen's friend, Hong says, Kuen, he says, Kuen's friend, Kuen just had a talk with you earlier, and then he agrees to exactly the same deal that he had discussed with Kuen the day before. Your theory is just Kuen just happened to pass on the information to him, but there was no, no conspiracy. In other words, he doesn't have to get money, he just has to agree with, with the seller to engage in this illegal conduct. Why isn't that sufficient evidence? So, you know, I think even assuming that the talk that was discussed on that call, you know, and I do think just simply saying okay to that is, is innocuous, ambiguous, but, but let's just assume that it's something more than that, that it's acknowledging some sort of talk that they had earlier that wasn't presented at trial. Well, but it's not just a talk. It seems to me when you add in the next day's stuff, isn't that enough from which a, I rational finder of fact could find that these two were working, had agreed together that the drugs would be delivered to the informant? So, I mean, Your Honor, no, it's, it's, it's not. I think that sufficiency requires, as the Supreme Court has said, more than a mere modicum of evidence. It requires not speculation, but reasonable inference, as this Court sitting on Boggs said at Neville's, and I think if you look, applying that standard at this Court's cases, as well as cases in other circuits that we've, we've cited in our brief, it does require sort of a more, more detailed level of coordination and planning. Let me ask one more question on this, just that I'm clear. This argument only goes to the conspiracy count. That is correct, Your Honor. Not for the, not to the distribution count. That is correct, but we believe that the distribution count would fall as a result of our other arguments, but as to this argument, just the conspiracy count. My question is, what, so the government didn't call Quinn to testify to this, rather introduce the recorded statements of her. Why couldn't the defense have called Quinn? The defense, the defense certainly could have attempted to call Quinn. I don't think it was its burden to call Quinn to testify. It was the, okay, I, I agree with that, but I'm just wondering. Quinn, Quinn was incarcerated at the time. Quinn was already incarcerated, already cooperated. Had already pled guilty at that point. Pled guilty, got a safety valve. Instead, though, the government chose to rely on this hearsay evidence. Hearsay. And, you know, I'd be happy to address that if the, the court would like me to turn to that. But, you know, again, I, you know, I would encourage the court to, you know, take a look at the cases cited in our reply. The, you know, at footnote two of our reply. Basically showing that, that more detailed involvement needs to be alleged and, and presented at trial by the government. Suppose that the jury could have decided that Quinn was in a conspiracy with, not with Hong, but with whoever provided the drugs to sell. That. Well, the theory was that, that Hong provided the drugs to sell. So, so, basically the, the, the primary theory at trial was that Quinn and Hong were, were at, at the co-conspirators. The alternative theory was that Sue, the, the muscle was, was you know, the other co-conspirator. But again, you know, at most they just said hello outside of the restaurant. Art, for the sake of argument, let's assume that Sue was in the car. The evidence that is, you know, that was shown at trial pales in comparison to what this court has, has said was sufficient in Power and in Power is you have much more detailed actual protection going on by the alleged muscle or, or lookout. In Power you have the muscle actually carrying a handgun, driving the co-conspirator to a sale, walking close behind, placing calls. Does it make a difference in this case that Quinn owns the cafe? That Quinn owns the cafe? Yeah, I mean he says. No, it doesn't because. Somebody calls him, he says meet him at my place tomorrow. The informant. He meets him at his place tomorrow. When he meets him, the guy can, in effect, confirms your, your client. In effect, is in fact told that Quinn is okayed, this guy. The informant was the one that suggested the location. That was not suggested by Quinn. Quinn basically was just, the tenor of the call was, this is hands-off, this is between you guys. I guess my question is if Quinn were not a co-conspirator, why would he agree to the sale of the illegal drug at his place of business? This is. That's, you know, I mean, if he's just referring him to a drug dealer. I don't think there's any evidence of that. Why does he agree to it there? I don't think Quinn, that there's any evidence of Quinn agreeing to, agreeing to this occurring at, at her cafe at all. This simply just occurred after the referral at, by virtue of, of Hong and the informant talking. If, if Quinn must have agreed to it because your client never speaks to. I just don't, I don't think that. He never speaks to the informant, so. Again, this. So he, he shows up at the cafe. This was a place. Somebody must have transmitted that. But this was a place that the informant was a regular at. It could have been a place that Hong was a regular at. They could have just decided to meet there independently. And again, that goes to the point I'm making about the arm's length relationship. I'm interested in your arguments about the methamphetamine distribution count. Mm-hmm. Which seems to me quite strong on the evidence. So tell me what. I, I disagree, Your Honor. So if I could turn to the, the hearsay point. There doesn't seem to be any dispute, really, that the court applied an improper legal standard. So I do want to turn, you know, directly to get at Your Honor's question as to what. Well, you're not disputing. I'm not sure I agree with you. Don't tell me that. Well, the court only relied upon the, the co-conspirator statements themselves to, as the foundation, which violates this, this court's holding in Silverman, pretty directly. So given the, the improper standard that was applied, you know, I, I think it, you know, it makes sense to just. No, spend another minute on that. Sure, sure. Absolutely. I'm not sure I understand your argument. Yeah. So the, the government based the conspiracy charge and also sought to undermine, undermine Hong's entrapment defense with these alleged co-conspirator hearsay statements. But it actually fell well short of carrying its burden. There is a foundational requirement of presenting non-hearsay evidence of an underlying conspiracy as Rule 801 D23 requires to admit the statements. But that's why I ask all these questions about these facts that aren't, that aren't the statements. In other words, there is, on the day of the sale, he shows up at Quinn's Cafe to buy from a person, from a person that he had no prior knowledge of. Sure. Yes. So I want to get to that, Your Honor. Don't all those things provide, provide sufficient facts other than the statements? So I think, I think that that goes to the harmless error as to the incorrect legal standard that, that is, was applied here. Because that is an independent error as to whether there's, the, the court actually operated under the correct legal framework. That is a legal error. So to get at Your Honor's point as to whether there was other non-hearsay evidence showing a conspiracy such that the error was harmless, the government relies on those, you know, subsequent communications and the prior sale. But again, you know, I think that evidence is consistent with, with Mr. Hong's unawareness of a conspiracy occurring, as several of the cases cited at page 27 of our opening brief, brief illustrate. You actually need planning and coordination or, or some sort of concert of action, as this court said in Lloyd. Like you need the specific statements in the call actually tracking what ultimately happened when the sale occurred. So here again, the evidence is more along the lines of, call this guy, talk to him about whatever you want, and then Hong interacting with... The distinction that you're making is that the, even though there was a, a referral to Hong, providing his phone number and essentially facilitating the transaction on the date, all of that is insufficient then to admit the statements because the statements themselves would have had to talk about those things. So, so you're trying to draw a distinction between the connection between the two people, which is obvious from these various acts and what was actually said. Yes. I think that's right. I think that's right. You need something besides the call themselves basically, to, to, to make this sort of foundational showing. And, and I think that the, that if you're going to rely on the calls themselves, the details need to track what ultimately happened here. If you were being charged basically only on the calls themselves, I'd understand your argument, but it appears to me here that the actions that occur are perfectly consistent with the calls. I, I disagree on it. There was no details in the, in the, when you look to the, the co-conspirator calls, there were no details actually discussed. You'll recognize the guy because he wears glasses and then somebody wearing glasses approaches your client with no, you know, no other reason to approach it. Sure. I mean, so things occur consistent with the call. I would encourage your honors to take a close look at Silverman as well as Castaneda. The case is cited in our brief. The court does apply a much more stringent standard than it might to, for example, sufficiency in terms of this, this, this requirement here, this foundational requirement of, of showing a conspiracy. Let me invite you again, because I'm not sure any of this would matter to your client if, if we uphold the distribution count. Well, it, no, I mean, because I think that this, this evidence went to the entrapment defense also. Okay. But tell me why the distribution count is, should be reversed and start with the notion that the entrapment instruction was the one you proposed, wasn't it? So I think those are two separate sort of arguments we make. We do think that... You think there was entrapment as a matter of law? No. You're, we, we, but we did raise a strong entrapment defense and we did get an instruction on it and the government used this hearsay evidence to undermine that entrapment defense. It doesn't dispute that, the, the prejudicial impact of the hearsay in terms of the entrapment defense, which goes to both counts. So it's the same, it's the same argument. It's that this evidence, if excluded, would have, would have, would have made it, went, went to the methamphetamine distribution count. Exactly. It was referenced repeatedly during opening and closing statements by the prosecutor. It, it, the, the arguments deprived Hong ultimately of a fair opportunity to make out that entrapment defense, which was otherwise strong. It didn't deprive him of the ability, obviously he, he sold, the evidence establishes that he sold, that he bought the methamphetamine. Yes. So, so what you're saying is that he, his entrapment defense would have... Was undermined critically by the hearsay. And, and if I, you know, I see that I'm almost out of time, but, but I just want to just for 10 seconds, just briefly address, because Your Honor addressed it, the instructional errors, why I think that's so important in this case, and why this court's intervention on plain error review would be warranted. The case, I think, has exposed a few very clear inadequacies in the court's model instructions. Well, it's not only that we do plain error review, isn't this invited error? I disagree, Your Honor. And we've set forth that... You said to the judge, please give these instructions. And the judge said, okay. And now you're saying, oh my God, that was a terrible error by the judge to agree with me. That was the pre-Perez case law, but this court sitting on Bonk and Perez after the Supreme Court's decision in Olano, squarely rejected that sort of application of the invited error doctrine. Basically saying that the defendant not only has to propose the instruction, but then, but has to be actually aware of the point of law that they're contesting on appeal. And the government does bear a heavy burden of showing waiver. And here there was no evidence that these instructions were discussed on the record, that this, that these infirmities were discussed on the record and that Hong intentionally abandoned that, right? So we do think that this is a case that calls out for the court addressing the issue on plain error review and that Hong's entrapment defense was critically undermined by the erroneous instructions. Thank you, Your Honor. I'll reserve time.  Good morning, Your Honors. If it may please the court, Sean Andrews on behalf of the United States. Mr. Andrews, will you list for me what the government thinks is the evidence independent of the state, the recorded statements that point to a conspiracy in this case? Your Honor, aside from Ms. Nguyen's statements in Exhibits 2 and 7, we point primarily to the defendant's own statement in Exhibit 5, which is the call that's sandwiched in between the calls contained in the evidence at Exhibits 2 and 7. And I think this was sort of touched on by Judge Hurwitz. What we have in Exhibit 5 at the very outset is a conversation between the CHS and Mr. Hong, the defendant, where initially there's some confusion from Mr. Hong about who this informant is. The informant identifies himself as Ty, and it's only when he says, Ty, Quinn's friend. Quinn had a conversation with you earlier, and there's an acknowledgement by the defendant through his tone. Oh, okay, I see. And then as you proceed through that call, the critical piece of evidence showing that there was more than just a simple referral or a mere referral in a previous conversation between Ms. Nguyen and Mr. Hong is the fact that Mr. Hong and the CHS have this totally fluent conversation about price of a substance, but that substance is never named. I take it you're relying just on Mr. Hong's statements there, correct? In addition to Mr. Hong. Because the CHS's statements get admitted under the co-conspirator theory, correct? The defendant's. We're saying that Ms. Nguyen's statements were admissible as co-conspirator statements, yes. Right, but to the extent you're relying on Exhibit 5, what you're relying is on what Hong said, not what the other person on the call said. Right. Because it's what the other person on the call said that your friend is attacking. Well, what we're pointing to are the defendant's statements himself, and I think the statements that... Yeah, and I guess my question is, can I just look at those without the responses and find that there's sufficient evidence of the existence of a conspiracy without the responses by the other person? I think you can look at the defendant's statements because the instruction that's often given, and I believe was given here, is that those statements are not offered for their truth necessarily, but offered just because they were said. And the acknowledgement... They're admissible in your view, absent the co-conspirator theory, to demonstrate not the truth of the matters stated, but to give context to Mr. Hong's statements? Is that your position? We have context, and we also have essentially an adoptive admission. When you say, oh, I understand what you're talking about, yes. In other words, I spoke with Quinn earlier. To where that statement that you're making right now, where is that in the record? You take the ER site as opposed to the exhibit site? Yes. The statement that you just, I think, tried to quote right now, where you think that that statement is in its entirety the admission? Yes, your honors. That's 623 to 625. That's correct. Where is this statement? Is it on 623? 624? You know, I see the call, the discussion. I want to know where that statement is that you're talking about. I believe Judge Hurwitz is correct. I'm always correct, but I'm not sure I'm right. Those are three pages. I want to know where the statement is. I'm at 623 to 625. Pull this up, your honor. My apologies. Hong says Quinn when the CHS calls him. The CHS says Quinn's friend, and then Hong says, okay, okay. Then the CHS says, I can get three of these tomorrow, and Hong agrees. Hong agrees to a price, and then they agree to meet at some place the next day. That's what Hong says. Is it your position that what Hong says there is enough to establish the existence of conspiracy? Well, it's one piece, and that's why we transmitted the actual exhibits that were put in front of the jury, because the tone with which Mr. Hong says those words becomes critically important. It seems like it's from this that CHS knows Hong already. He says, hello, Pee-wee. Who is it? Pee-wee. Why is he calling him Pee-wee? Because he had received a text message from Ms. Nguyen. There were two text messages. These were Exhibits 3 and 4. Tell me who Nguyen is. I'm sorry? Quinn. You mean Quinn? Quinn. Not Nguyen. Her last name's Nguyen. Oh, okay. I'll refer to it as Quinn. Sorry. The CHS received two text messages from Quinn after the call that's in evidence at Exhibit Number 2, where she sends a number, which is Mr. Hong's number, and then a name. His name is Pee-wee. So the CHS is referring to him by his non-government name as a result of being provided that information by Ms. Nguyen. And there's later some independent identification that Pee-wee is Hong. That's correct. I think the brief says they contested it below. They continue to contest it, but there's nothing in the brief about why they contested. Well, Your Honor, I just think on the evidence in this case, there was really no doubt that Pee-wee was, in fact, Mr. Hong because we showed pictures. Again, I want to return to those are both the texting and the Pee-wee are both co-conspirator statements, are they not? They are. So they can't establish by themselves the existence of the conspiracy. Right. So Mr. Hong's statements themselves are additional evidence outside of the co-conspirator statements. The fact that Ms. Nguyen pleaded guilty to the offense is additional evidence establishing the conspiracy. Is it Nguyen or I thought it spelled N-H-U, that's Nguyen? N-G-U-Y-E-N, Nguyen. Quinn New Cafe? Right. The cafe was named after her. It was her cafe. Right. But it's not Nguyen, it's Nguyen. I don't know how to pronounce N-H-U. Just from my knowledge of this case and dealing with Vietnamese translations, Nguyen is sort of like sweetheart, so first name and a sort of moniker. So the thing I'm struggling with as I'm looking at ER 623 to 625 is that the exchange that's happening, I think, gives you what you need for purposes of the sufficiency of the evidence on the distribution. There's obviously a discussion happening about the sale of these pieces and the cost and whatnot between CHS and Hong. What I'm not so clear about and what I'm struggling with is how these statements by Hong independently establish the conspiracy. Because there is, other than the CHS statement that I got your number, this is Tai, Quinn's friend. What friend, whose friend, Tai, Tai, Tai, Quinn's friend, Quinn's friend. You know, okay, so then they established that the referral came from Quinn. But everything that happens after that with respect to the timing and the cost and the request for three pieces, it doesn't reference any sort of negotiation or arrangement or I think what your friend on the other side is saying, the additional detail that would establish an actual conspiracy. So I think in terms of the independent evidence requirement, it's just some evidence outside of the co-conspirator statements themselves. And we're pointing to the fact that this is, in fact, additional independent evidence outside of the co-conspirator statements. And I think Judge Hurwitz touched on this earlier. Really, the statement that's in Exhibit 5 or at the previous conversation that Quinn had with Mr. Hong. So the statements don't need to say or reference any sort of arrangement. So your positions are really just very opposite in terms of the arguments that you're making as to what is necessary to establish that. That's right. Really, the standard is, we believe here, clear air. And did the judge make a clear air when he found, by a preponderance of the evidence, using all available evidence contained in the record, that there was a sufficient concert of action? And we agree, there has to be independent evidence outside of the co-conspirator statements. But the independent evidence, your friend says, I think, reasoning from previous cases, that the independent evidence needs to be strong evidence. Is that our law? I think the quotation is from Silverman, Your Honor, and it's fairly incriminating, is what Silverman says over and over again. One thing that I would say is that Silverman is sort of hard to square with another 1988 case, which is United States v. Leighton, which says that the co-conspirator exception is really rooted in the law of agency. So in order for a judge to find that a statement is, in fact, a co-conspirator statement, there can be any agreement, legal or otherwise, that can be proved in order for the co-conspirator statement to hold. So Silverman has this discussion about fairly incriminating evidence, but it's sort of hard to square with Leighton. But that being said, this is incriminating evidence. And what else is incriminating here, Your Honor, that we would point to as independent evidence in the record is Quinn's guilty plea. She, in fact, pleaded guilty to this same conspiracy. Introduced that evidence at trial? It was not introduced in evidence at trial. So doesn't, I understand it's pretty powerful. Can the judge take it into account when deciding, can he take evidence not admitted at trial into account in deciding whether or not there's independent evidence of the conspiracy? Yes, Your Honor. It's under 104A, the judge can consider without... Because it's a primary issue of admissibility and therefore the rules of evidence don't apply. That's exactly right. So any argument that Quinn's guilty plea was hearsay just doesn't hold under 104A. And Quinn pleads guilty to conspiracy? And specifically admits to being in a conspiracy with Mr. Hong. Is the indictment alleged conspiracy with Mr. Hong? Yes. And then I think what Your Honor was sort of touching on before is the chronology of facts that happens afterwards also is independent evidence, right? You're going to find a guy with glasses, a guy with glasses in fact shows up. Well, they match the description of the person that Quinn says that they're going to meet, right? Can I ask you a question about a topic your friend didn't touch on and maybe... But it's brief. It's the Batson issue in this case. The judge is supposed to go through at least a three... It's a three-step analysis. First question is, have you made a prima facie case? Second question is, does the prosecution have a non... offer a non-pretextual reason? And the third thing is, does the judge believe it's non-pretextual? Did the judge do that here? He just seems to have skipped to step three and said, at a point when none of the other... I mean, I think it doesn't appear to me that there's plenty of evidence that is non-pretextual here. The difficulty is I'm not sure how he gets there on the first challenge of the case. I think we have to look at sort of how the challenge was raised. And I think in what I would say your stock sort of Batson challenge, whoever is making the challenge would try to point towards some sort of specific action. But that happened. So let me just supplement Judge Hurwitz's question here. And what I'm wondering is, if we determine that the judge erred by concluding without sort of moving to the government to provide a neutral, race-neutral objective reason for the strike, what do we do with that? You can review DeNovo, Your Honor. And I think there's ample evidence in the record showing that that strike wasn't motivated by a discriminatory purpose. You can go back... So the judge didn't make that finding? Correct. You can review DeNovo. And in this case, I think fortunately, that same juror who I struck with a peremptory, I attempted to strike for cause. And my reasons for attempting to strike for cause were on the record. His responses about whether he could be fair in light of his experiences with law enforcement were the responses that I gave. And that's the response you would have given had you gotten to Step 2. Correct. But let me ask you about Step 1. The group, if you will, that the other side says the stricken juror belongs to is men of color. Is that a sufficient identification to take us to Step 2? It's not, Your Honor. And the Ninth Circuit has never recognized it as such. Well, we've never recognized it, but we're all here. So I mean, the fact that we've never recognized it, we're not dealing here with a, you know, we need clearly established law case. So tell me why it's not. So Sotyswad is the case. It's a 1982 case, Your Honor, which declined to recognize, quote, non-whites as a category under Batson because it would have, quote, no internal cohesion. And I think that would apply here. He said black men of color? Would it have made a difference? I think that's already a... Black men. Black men. I'm sorry. Sure. I think that's a cognizable group already. But just because he said men of color, it's not cognizable. I think it's not sufficient. Even if the jury knows what the color of the man is? Yeah. And ultimately, what I think this comes down to is this case on the facts here, particularly the justification that was given for the four cause challenge, just isn't the vehicle to recognize this hybrid classification that's never been recognized before. With that, Your Honors, I have nothing further. All right. Thank you, counsel. Mr. Haney, I'll give you a couple minutes. Thank you, Your Honors. I'll be brief. Just turning quickly to the hearsay point, the standard of review is not clear error. This was, again, as I stated, an erroneous legal standard. Cases cited in our reply, footnote nine, address this issue. And I'd encourage the question before. If, in fact, on this record, it's not clear error because it was harmless, then it's not clear error. It has to prejudice you. Well, we think we prevail under either standard of review, even clear error. But the standard of review is de novo because this was an improper legal standard that was applied here. And it was not, in fact, harmless for the reasons I've already stated. Silverman, I just want to address my friend on the other side's attempt to sort of distinguish or undermine Silverman. It's been applied by this court since the 1980s. And Mikkel, a case cited in our brief, as well as Castaneda, also cited in our brief. It is still good law and is still applied often in this circuit. Regarding government counsel's gloss of the tone in Exhibit 5, when the Hong said, OK, I want to point the court to ER 414, where the district court actually, when that evidence was presented at trial, and government counsel attempted to make that inference and present that, his own gloss on the Vietnamese translation of as OK, the district court expressly corrected government counsel and said, that's not what it says. And if the court obviously has that exhibit and it can review it if it would like. And then finally, regarding the guilty plea, I just want to address that in terms of harmless error analysis. That's just simply more unreliable hearsay, which can't form the foundation. But 104A doesn't require that admissibility, that the admissibility decisions may be made solely with admissible evidence. We're not saying as a matter of law that the court can't consider it as part of its harmless error analysis and whether that... But I understand your argument that they applied... I'll let you finish. No, it's OK. I understand your argument that the court applied the wrong legal standard. I'm now asking a different question, which is that given, I think I'll say Quinn, given Quinn's guilty plea, which is admissible, to show the existence of a conspiracy, why isn't that enough to establish... Because even if under 104 it can be considered, it's simply unreliable. A defendant signing a plea agreement may adopt facts that the government wants to hear in exchange for a benefit, including a lesser sentence. The factual basis in a plea agreement, you know, binds the party who signs it, but it's not binding upon a co-defendant. It's not binding on him, but it seems to me to be pretty powerful evidence that Quinn was in a conspiracy with Hong since Quinn pleaded guilty to being in a conspiracy with Hong. Why isn't that enough to get them past the line? I disagree, Your Honor. I think the bar that the court set in Silverman is intentionally high. It's called this sort of hearsay doubly suspect, and it requires something stronger here. And if the court actually looks at, for example, the wealth of cases regarding the penal interest exception, this court has doubted the reliability of admissions and plea agreements for the very reasons that I'm stating, you know. But even if the court were to accept the plea agreement as probative, perhaps... Just the plea. The plea, yes. Establishes as a matter, establishes that Quinn was in a conspiracy with Hong. So... Provide the factual basis for it for a moment. Right, right, right. So Quinn admitted to facilitating an introduction to Hong as part of the conspiracy, but she plausibly only did so after the informant first contacted her. And the corroboration, the conspiracy has to be shown at the time of the statements. I know you're over time, but let me just ask if I can ask one more question on this. So if Quinn had come to trial and said, well, I engaged in a conspiracy with Hong, with her, you know, you could cross examine, obviously, but we wanted... Wouldn't those facts be enough to establish the existence of the conspiracy independent of the hearsay statements? I think that would be a very different circumstance. If that evidence wasn't presented by the government, they chose not to. Well, but again, the judge doesn't need to have admissible evidence to do it. So why isn't this the equivalent of Quinn saying, for purposes of the judge's analysis, I was in a conspiracy with Hong? Because, again, she only facilitated the introduction and it was after these calls occurred. And it has to be at the time of the occurrence of the calls that the conspiracy exists. And, you know, at best, what that would establish is something occurred after the fact, basically. And that's what's required under the law. And if I could just very briefly address Batson, if you're honored, don't mind. This court doesn't just need to apply de novo review upon the showing of a procedural error as occurred in this case, as the court did in Alvarez Loa as an alternative remedy. When the factual record is inadequate, it can remand for further fact finding or a new trial. And finally, with regard to whether or not men of color are protected class under Batson, the Supreme Court in Power v. Ohio conveyed pretty clearly that skin color is protected under Batson. So we would urge the court to apply that precedent here. All right. Thank you, counsel. Thank you, Your Honor. U.S. v. Hong will be submitted.
judges: WARDLAW, HURWITZ, DESAI